## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

AMBER H.,[1]

                                                    Plaintiff,

          v.                                                      3:20-CV-490
                                                                  (ATB)
ANDREW SAUL,

                                                    Defendant.

PETER A. GORTON, ESQ., for Plaintiff
RAMI VANEGAS, Special Asst. U.S. Attorney, for Defendant

ANDREW T. BAXTER
United States Magistrate Judge

### MEMORANDUM-DECISION AND ORDER

This matter was referred to me, for all proceedings and entry of a final judgment,

pursuant to the Social Security Pilot Program, N.D.N.Y. General Order No. 18, and in

accordance with the provisions of 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y.

Local Rule 73.1 and the consent of the parties. (Dkt. Nos. 4, 7).

## I.   PROCEDURAL HISTORY

On February 12, 2018, plaintiff protectively[2] filed an application for

---

[1] In accordance with recent guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Northern District of New York in June 2018 in order to better protect personal and medical information of non-governmental parties, this Memorandum-Decision and Order will identify the plaintiff using only her first name and last initial.

[2] When used in conjunction with an "application" for benefits, the term "protective filing" indicates that a written statement, "such as a letter," has been filed with the Social Security Administration, indicating the claimant's intent to file a claim for benefits. *See* 20 C.F.R. §§ 404.630, 416.340. There are various requirements for this written statement. *Id.* If a proper statement is filed, the Social Security Administration will use the date of the written statement as the filing date of the application even if the formal application is not filed until a later date.

Supplemental Security Income ("SSI"), alleging that she became disabled on April 15, 1993. (Administrative Transcript ("T") 69, 169).  Her application was denied initially on April 20, 2018. (T. 70).  Plaintiff requested a hearing, which was held on August 21, 2019 before Administrative Law Judge ("ALJ") Charlie M. Johnson. (T. 32-54, 78).  ALJ Johnson issued an unfavorable decision on August 29, 2019 (T. 10-22), which became the Commissioner's final decision when the Appeals Council denied plaintiff's request for review on March 6, 2020. (T. 1-3).

## II.   GENERALLY APPLICABLE LAW

### A. Disability Standard

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI disability benefits must establish that he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 1382c(a)(3)(A). In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such  severity that he is not only unable to do his previous work but  cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hire if he applied for work

42 U.S.C. § 1382(a)(3)(B).  The Commissioner uses a five-step process, set forth in 20 C.F.R. sections 404.1520 and 416.920, to evaluate disability insurance and SSI disability claims.

> First, the [Commissioner] considers whether the claimant is currently
> engaged in substantial gainful activity. If he is not, the [Commissioner]
> next considers whether the claimant has a "severe impairment" which
> significantly limits his physical or mental ability to do basic work
> activities. If the claimant suffers such an impairment, the third inquiry is
> whether, based solely on medical evidence, the claimant has an impairment
> which meets or equals the criteria of an impairment listed in Appendix 1 of
> the regulations. If the claimant has such an impairment, the
> [Commissioner] will consider him disabled with-out considering
> vocational factors such as age, education, and work experience…
> Assuming the claimant does not have a listed impairment, the fourth
> inquiry is whether, despite the claimant's severe impairment, he has the
> residual functional capacity to perform his past work. Finally, if the
> claimant is unable to perform his past work, the [Commissioner] then
> determines whether there is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see* 20 C.F.R. §§ 404.1520,

416.920. The plaintiff has the burden of establishing disability at the first four steps.

However, if the plaintiff establishes that his impairment prevents him from performing

his past work, the burden then shifts to the Commissioner to prove the final step. *Id.*

### B. Scope of Review

In reviewing a final decision of the Commissioner, a court must determine

whether the correct legal standards were applied and whether substantial evidence

supported the decision. *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013); *Brault v.*

*Soc. Sec. Admin. Comm'r,* 683 F.3d 443, 448 (2d Cir. 2012); 42 U.S.C. § 405(g).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir.

2012). It must be "more than a scintilla" of evidence scattered throughout the

administrative record. *Id.* However, this standard is a very deferential standard of

review, "even more so than the 'clearly erroneous standard.'" *Brault,* 683 F.3d at 448.

3

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). However, a reviewing court may not substitute its interpretation of the administrative record for that of the Commissioner, if the record contains substantial support for the ALJ's decision. *Id. See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

An ALJ is not required to explicitly analyze every piece of conflicting evidence in the record. *See, e.g., Monguer v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) (Finding we are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony). However, the ALJ cannot "pick and choose evidence in the record that supports his conclusions." *Cruz v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004); *Fuller v. Astrue*, No. 09-CV-6279, 2010 WL 5072112 (W.D.N.Y. Dec. 6, 2010).

## III.   **FACTS**

Plaintiff was born on April 15, 1983, making her 36 years old on the date of the administrative hearing.  (T. 38).  She was a single mother of three children.  (*Id.*).  Her living arrangements changed shortly before the hearing was held.  For the fourteen years preceding, plaintiff had been living with her youngest child's father, who supported her.  (T. 39).  Plaintiff testified that he had recently "kicked [her] out," and as a result she was receiving food stamps and residing at a friend's house, with her two

4

older children.  (*Id.*).  She drove on a limited basis, due to pain.  (T. 39-40).  She had an eleventh grade education, and no recent work experience.  (*Id.*).

Plaintiff testified that her scoliosis and vertigo prevented her from working full time.  (T. 40).  Her scoliosis caused "constant pain," affecting her ability to stand and sit.  (T. 40-41, 44).  The vertigo caused her to "black out."  (T. 41).  She took medicine every eight hours for dizziness, but still experienced "dizzy spells" daily.  (T. 41-42).  Plaintiff was prescribed medical marijuana to alleviate her back pain, and she also took medication for diabetes.  (T. 42-44).  Plaintiff's blood sugar had been "out of control," causing her to become lightheaded and shaky.  (T. 43).

## IV.   THE ALJ'S DECISION

After finding that plaintiff did not engage in substantial gainful activity ("SGA") after the application date, the ALJ found that plaintiff suffered from the following severe impairments at step two of the sequential evaluation: curvature of the spine, obesity, vertigo, and headache. (T. 13).  At step three of the evaluation, the ALJ found that plaintiff's impairments did not meet or medically equal the severity of any of the listed impairments. (T. 15).

At step four, the ALJ found that plaintiff had the RFC for light work, with the exception that she could only occasionally balance, stoop, crouch, crawl and climb ramps and stairs; and never climb ladders, ropes or scaffolds.  (T. 16).  Additionally, the ALJ found that plaintiff could never perform overhead reaching, and must avoid hazards such as unprotected heights and dangerous machinery.  (*Id.*).  In making this determination, the ALJ considered plaintiff's alleged symptoms, together with all the

medical and other evidence of record, ultimately determining that plaintiff was not as limited as she alleged. (T. 17).

Next, the ALJ found that plaintiff had no past relevant work.  (T. 20).  However, at step five, using the Medical Vocational Guidelines as a "framework," and the VE's testimony, the ALJ found that plaintiff was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy."  (T. 21). Thus, the ALJ found that plaintiff was not disabled.  (*Id.*).

## V.    ISSUES IN CONTENTION

Plaintiff raises the following arguments in support of her position that the ALJ's decision was not supported by substantial evidence:

1.    The ALJ improperly substituted his opinion for undisputed medical opinion. (Plaintiff's Brief ("Pl.'s Br.") at 6-17) (Dkt. No. 13).

2.    The ALJ improperly assessed the medical opinions. (Pl.'s Br. at 17-18).

3.    The Commissioner did not sustain his burden at step five. (Pl.'s Br. at 19).

Defendant contends that the ALJ's decision is supported by substantial evidence, countering each of plaintiff's arguments. (Defendant's Brief ("Def.'s Br.")) (Dkt. No. 16).  For the following reasons this court agrees that the ALJ failed to sufficiently evaluate the persuasiveness of the medical opinions of record in accordance with the new regulations, and remand is therefore warranted.

## VI.   RFC/EVALUATING MEDICAL EVIDENCE

### A.    Legal Standards

#### 1.    RFC

RFC is "what [the] individual can still do despite his or her limitations.

Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. . . ." A "regular and continuing basis" means eight hours a day, for five days a week, or an equivalent work schedule. *Balles v. Astrue*, No. 3:11-CV-1386 (MAD), 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96–8p, 1996 WL 374184, at *2)); *Babcock v. Berryhill,* No. 5:17-CV-00580 (BKS), 2018 WL 4347795, at *12-13 (N.D.N.Y. Sept. 12, 2018); *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 33 (2d Cir. 2013); *Stephens v. Colvin*, 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016).

In rendering an RFC determination, the ALJ must consider objective medical facts, diagnoses, and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations. 20 C.F.R. §§ 404.1545, 416.945. *See Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)); *Kirah D. v. Berryhill*, No. 3:18-CV-0110 (CFH), 2019 WL 587459, at *8 (N.D.N.Y. Feb 13, 2019); *Genier v. Astrue,* 606 F.3d 46, 49 (2d Cir. 2010). An ALJ must specify the functions plaintiff is capable of performing, and may not simply make conclusory statements regarding a plaintiff's capacities. *Roat v. Barnhart,* 717 F. Supp. 2d 241, 267 (N.D.N.Y. 2010); *Martone v. Apfel*, 70 F. Supp. 2d at 150 (citing *Ferraris v. Heckler*, 728 F.2d 582, 588 (2d Cir. 1984); *LaPorta v. Bowen*, 737 F. Supp. at 183, *Stephens v. Colvin,* 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016); *Whittaker v. Comm'r of Soc. Sec.*, 307 F. Supp. 2d 430, 440 (N.D.N.Y. 2004). The RFC assessment must also include a

narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts, and non-medical evidence. *Natashia R. v. Berryhill*, No. 3:17-CV-01266 (TWD), 2019 WL 1260049, at *11 (N.D.N.Y. Mar. 19, 2019) (citing SSR 96-8p, 1996 WL 374184, at *7).

> Under 20 C.F.R. §§ 404.1567(b) & 416.967(b), light work is defined as follows:

> [L]ifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

Social Security Ruling 83-10 elaborates on the requirements of light work:

> Since frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday. Sitting may occur intermittently during the remaining time.

SSR 83-10, 1983 WL 31251, at *5-6. *See also Poupore v. Astrue*, 566 F.3d 303, 305 (2d Cir. 2009) ("The full range of light work requires intermittently standing or walking for a total of approximately 6 hours of an 8-hour workday, with sitting occurring intermittently during the remaining time.").

### 2.  Evaluating Medical Evidence

The regulations regarding the evaluation of medical evidence have been amended for claims filed after March 27, 2017, and several of the prior Social Security Rulings, including SSR 96-2p, have been rescinded.  According to the new regulations, the

Commissioner "will no longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion." *Revisions to Rules Regarding the Evaluation of Medical Evidence* ("*Revisions to Rules*"), 2017 WL 168819, 82 Fed. Reg. 5844, at 5867–68 (Jan. 18, 2017), *see* 20 C.F.R. §§ 404.1520c(a), 416.920c(a).  Instead, the Commissioner must consider all medical opinions and "evaluate their persuasiveness" based on the following five factors: supportability; consistency; relationship with the claimant; specialization; and "other factors."  20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c).

Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning "weight" to a medical opinion, the ALJ must still "articulate how [he or she] considered the medical opinions" and "how persuasive [he or she] find[s] all of the medical opinions." *Id.* at §§ 404.1520c(a) and (b)(1), 416.920c(a) and (b)(1).  The two "most important factors for determining the persuasiveness of medical opinions are consistency and supportability," which are the "same factors" that formed the foundation of the treating source rule. *Revisions to Rules*, 82 Fed. Reg. 5844-01 at *5853.

An ALJ is specifically required to "explain how [he or she] considered the supportability and consistency factors" for a medical opinion.  20 C.F.R. §§ 404.1520c (b)(2), 416.920c(b)(2).  With respect to "supportability," the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior

administrative medical finding(s) will be." *Id.* at §§ 404.1520c(c)(1), 416.920c(c)(1). The regulations provide that with respect to "consistency," "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* at §§ 404.1520c(c)(2), 416.920c(c)(2).

Under the new regulations an ALJ must consider, but need not explicitly discuss, the three remaining factors in determining the persuasiveness of a medical source's opinion. *Id.* at §§ 404.1520c(b)(2), 416.920c(b)(2).  However, where the ALJ has found two or more medical opinions to be equally well supported and consistent with the record, but not exactly the same, the ALJ must articulate how he or she considered those factors contained in paragraphs (c)(3) through (c)(5). *Id.* at §§ 404.1520c(b)(3), 416.920c(b)(3).

## B.    Application

Plaintiff argues that the ALJ improperly assessed the medical opinions of record by failing to sufficiently analyze the "consistency" and "supportability" factors under the new regulations, and that the ALJ's evaluation of these opinions was not supported by substantial evidence.  Plaintiff also argues, more specifically, that the ALJ substituted his lay opinion for undisputed medical opinion on the issues of work pace and/or attendance.

To plaintiff's point, the majority of the medical opinions in the record do not support the ALJ's finding that plaintiff retained the residual functional capacity to

perform modified light work as described in the RFC determination.  In his decision, the ALJ considered the opinions of two treating sources, physician Anne Calkins, M.D., and physician's assistant ("PA") Tiffany Gates-Maby.  (T. 19-20, 439-40, 442-43). Both providers opined that plaintiff would be off task for one-third of the workday and would miss more than four days of work per month.  (T. 439-40, 442-43).  Dr. Calkins opined that plaintiff could sit for six hours and stand/walk for two hours, but would need to change positions every fifteen minutes.  (T. 440).  She further opined that plaintiff could only occasionally lift ten pounds.  (*Id.*).  Dr. Calkins emphasized the severity of plaintiff's scoliosis.  (*Id.*).

The ALJ also considered the opinion of consultative examiner Justine Magurno, M.D.  (T. 19, 433-37).  Based upon her review of plaintiff's reported medical history and the results of her physical examination, Dr. Magurno opined that plaintiff had marked limitations for lifting and carrying; moderate limitations for bending and squatting; and mild limitations for prolonged sitting, standing, walking, reaching, pushing and pulling.  (T. 436).

The only medical opinion of record supporting the ALJ's RFC determination was that of non-examining state agency consultant R. Abueg, M.D.  (T. 18-19, 63-66).  Dr. Abueg opined that plaintiff could perform the exertional requirements of light work, with the exception of occasional postural and climbing activities, occasional overhead reaching, and avoidance of hazards.  (*Id.*).

The ALJ evaluated each of the aforementioned opinions, finding those rendered by Dr. Magurno, Dr. Calkins, and PA Gates-Maby to be "unpersuasive."  (T. 19-20).

The ALJ found Dr. Abueg's opinion "partially persuasive." (T. 18-19). In articulating his evaluation, the ALJ made some references to supportability and consistency, in an assumed attempt to comply with the mandates of 20 C.F.R. § 416.920c(a)-(c). However, for the reasons discussed below the court agrees that the ALJ's evaluation of the regulatory factors was superficial, and frequently misrepresented the medical evidence. The court will address the ALJ's discussion of each opinion in turn.

### Dr. Abueg - State Agency Medical Consultant

As previously discussed, Dr. Abueg's opinion was the only opinion of record supporting the RFC for modified light work, and appears to be the primary source for the exertional limitations rendered by the ALJ. It is well settled that, under both the old and new regulations concerning the evaluation of medical evidence, an ALJ may rely on the opinion of a non-examining state agency consultant in disability claims. *See Tamara M. v. Saul*, No. 3:19-CV-1138 (CFH), 2021 WL 1198359, at *7 (N.D.N.Y. Mar. 30, 2021) (acknowledging that under the old regulations, the report of a non-examining state agency medical consultant may constitute substantial evidence under the appropriate circumstances); *see also* 2017 WL 168819 at *5853 (discussing how under the new regulations, the opinions of all medical sources, including non-examining medical consultants, will be held to the same standard of persuasiveness of content).

Here, the ALJ found Dr. Abueg's opinion to be partially persuasive, recognizing that the medical consultant did not have the benefit of personally examining plaintiff or reviewing the entirety of the medical evidence. (T. 19). Nevertheless, the ALJ's

consideration of Dr. Abueg's attenuated relationship with the plaintiff is controverted by the fact that the ALJ credited Dr. Abueg's opinion, and the limitations contained therein, over the opinions of three other sources who had the opportunity to examine plaintiff on at least one occasion.  Otherwise put, it appears the ALJ evaluated the medical sources and made an RFC determination without adequately considering or explaining how Dr. Abueg's lack of familiarity with the plaintiff or the entirety of the record evidence affected his opinion regarding plaintiff's functional abilities.

This issue is compounded by the ALJ's limited evaluation of the supportability and consistency factors pursuant to 20 C.F.R. § 416.920c(a)-(c).  The ALJ's discussion of Dr. Abueg's opinion fails to sufficiently explain the basis for adopting the state agency consultant's opinion, and rejecting the three other opinions of record suggesting that plaintiff suffered from more restrictive limitations.  For example, the ALJ stated that Dr. Abueg's exertional and postural limitations were "generally supported by the imaging showing [plaintiff's] scoliosis[.]" (T. 19).  Without further explanation, however, the court is left to surmise how the ALJ reconciled Dr. Abueg's opinion for modified light work with plaintiff's x-rays evidencing "severe" scoliosis.  (T.  387).

The ALJ went on to state that Dr. Abueg's limitations were "consistent with [plaintiff's] reported ability to drive, care for her personal needs, cook, and go shopping." (T. 19).  The ALJ cited to plaintiff's function report in support of this contention.  (T. 19, 153-160).  It is unclear, however, how the ALJ found the statements contained therein to be consistent with plaintiff's purported ability to perform the exertional requirements of light work, particularly the ability lift and carry up to twenty

pounds and to stand or walk for six hours in an eight hour work day.  For example, plaintiff reported that she used a shower chair because she could not stand long enough to shower.  (T. 154).  She further explained that while cooking, she sat down in between stirring food, and asked her family for help.  (T. 155).  She explained that if she stood or walked for longer than five to ten minutes at a time, her back pain increased and her legs gave out.  (T. 156).  Although plaintiff stated that she performed some shopping for her household needs, and was able to "do" the laundry, she also clarified that she could not "lift anything" without exacerbating her back pain, and used a shopping cart and her children to assist her in walking through the store and collecting groceries.  (T.  44-45, 154-60).  Considering plaintiff's statements regarding her activities of daily living in their totality, the court cannot agree that they are consistent with, or constitute substantial evidence of, plaintiff's purported ability to perform the lifting, walking, or standing requirements of light work.  *See Salisbury v. Saul*, No. 19-CV-706, 2020 WL 913420, at *33 (S.D.N.Y. Feb. 26, 2020) ("The Second Circuit has long held that a claimant need not be an invalid, incapable of performing any daily activities, in order to receive disability benefits.") (citing *Balsamo v. Chater,* 142 F.3d 75, 81 (2d Cir. 1998) ("When a disabled person gamely chooses to endure pain in order to pursue important goals, it would be a shame to hold this endurance against him in determining benefits unless his conduct truly showed that he is capable of working.")).

Notwithstanding the SSA's recent regulatory changes, it remains incumbent upon an ALJ to support his disability determination with "relevant evidence as a

reasonable mind might accept as adequate to support a conclusion." *Talavera v. Astrue*, 697 F.3d at 151; *see also Revisions to Rules*, 82 Fed. Reg. 5844-01 at *5858 ("We expect that the articulation requirements in these final rules will allow a . . . reviewing court to trace the path of an adjudicator's reasoning . . . .").  For the reasons set forth above, this court seriously questions whether the ALJ's evaluation of Dr. Abueg's medical opinion was supported by substantial evidence.  In any event, the ALJ's evaluation did not adequately satisfy the articulation requirements set forth in 20 C.F.R. § 416.920c(a)-(b), particularly with respect to consistency and supportability, a legal error necessitating remand.

### Dr. Calkins and PA Gates-Malby - Treatment Providers

The ALJ found both Dr. Calkins's and PA Gates-Malby's mutual opinions to be unpersuasive for substantially the same reasons.  (T. 19).  He indicated that both opinions were unsupported by and inconsistent with plaintiff's treatment records, "including those noting [plaintiff] could swim on a regular basis, that she was staying active, and that she had stable back pain[.]" (*Id.*).  In the first place, this characterization of plaintiff's activity level is not an accurate representation of the evidence.  As plaintiff points out in her brief, she was not engaging in "recreational swimming or a high degree of physical activity."  (Pl's Br. at 10-12).  The record reflects that, in actuality, plaintiff was attempting aquatic therapy by walking in the pool two days a week, for fifteen-to-thirty minute increments of time.  (T. 619, 627).  Inasmuch as the ALJ would certainly find other forms of therapy, such as physical therapy, to constitute evidence of treatment as opposed to recreation, the ALJ's claim

that plaintiff could "swim on a regular basis" is misleading.  The ALJ did not explain what other activities plaintiff was engaged in that contradicted Dr. Calkins's and PA Gates-Maby's restrictive opinions, only citing to an isolated treatment note indicating that plaintiff was "staying active around [the] home."  (T. 619).

The ALJ's discussion of plaintiff's back pain was also an unreasonable interpretation of the medical evidence.  The ALJ stated that Dr. Calkins's and PA Gates-Maby's opinions were inconsistent with plaintiff's denials of back pain, including representations made by the plaintiff in July 2018 and July 2019.  (T. 19). The ALJ's observations, even if in good faith, are entirely out of context.  The ALJ appeared to be referring to a July 29, 2019 treatment note wherein plaintiff presented to her primary care provider with urinary and gynecological complaints.  (T. 451).  The portion of the note describing plaintiff's "GU," or genitourinary[3] symptoms, states that she was "negative" for back pain.  (T. 454).  Similarly, the July 2018 treatment note indicating plaintiff's "0/10 pain" was prepared in the context of a diabetes evaluation. (T.  473).  To the extent that these observations were clearly recorded in the context of treating other conditions, the ALJ's reliance on them was an unreasonable interpretation of the plaintiff's reported back pain from her scoliosis.  More importantly, these isolated records are contradicted by a myriad of treatment notes

---

[3]Genitourinary refers to the system of organs comprising those concerned with the production and excretion of urine and those concerned with reproduction.  *See* https://www.merriam-webster.com/medical/genitourinary%20tract

reflecting plaintiff's consistent reports of significant musculoskeletal back pain.[4]
Notably, the ALJ did not address this evidence, nor did he address the consistency
between plaintiff's pain as reported in these treatment notes, and the opinions of
plaintiff's treating providers.  In any event, no reasonable interpretation of the evidence
could conclude that Dr. Calkin's and PA Gates-Maby's opinions were contradicted by
the absence of subjective complaints of back pain in the longitudinal treatment record,
as the ALJ suggests.

Moreover, to the extent the ALJ referenced plaintiff's back pain as "stable"
during this period of time, this does not reflect "controlled" pain when read in context
with her contemporaneous reports of pain averaging from seven to ten on a scale of ten.
*See Kohler v. Astrue*, 546 F. 3d 260 (2d Cir. 2008) (remanded, in part, because the ALJ
interpreted the word "stable" to mean "good" instead of meaning claimant's condition
had not changed).

The ALJ further misrepresented the evidence by stating that plaintiff "did not
even require pain medication" in May 2018.  (T. 19).  In context, the relevant record
indicates that plaintiff was "not currently taking pain medications and [was] motivated
to control [her back pain] with diet and exercise."  (T. 620).  The ALJ, however, does
not consider whether plaintiff was actually successful in this endeavor, considering the
fact that two months later she was prescribed medical marijuana for "chronic pain that

---

[4]*See* Tr. 619 (5/29/18 - "Pain level remains unchanged and is averaging 8/10"); T. 483
(6/4/18 - "Pain is described as 8/10"); T. 628-29 (6/25/18 - "Pain level is slightly improved
averaging 7/10" . . . acknowledging plaintiff's "chronic [back] pain that is debilitating and
interferes with daily activities."); T. 616 (8/28/18 - "Pain level remains [sic] is slightly improved
averaging 8/10"); T. 612 (11/1/18 - "Pain levels slightly improved averaging 8/10"); T. 609
(3/27/19 - "Pain levels remain constant at 10/10").

is debilitating and interferes with daily activities." (T. 629).

As with Dr. Abueg's opinion, the ALJ failed to adequately apply the consistency and supportability factors to the opinions of Dr. Calkins and PA Gates-Maby, and remand is appropriate to determine the persuasiveness of their opinions based on the longitudinal evidence of record.

### Dr. Magurno - Consultative Examiner

The ALJ found Dr. Magurno's opinion unpersuasive.  In articulating his evaluation, the ALJ's discussion regarding consistency and supportability was limited to a comment that Dr. Magurno's "opinion regarding the plaintiff's marked limitations [for lifting and carrying] are inconsistent with her own observations that the claimant had negative straight leg testing, full strength, normal neurological and sensory function, and no distress."  (T. 19).  The ALJ's limited, and paraphrased, description of Dr. Magurno's examination findings do not comport with the requirements of 20 C.F.R. § 416.920c(a)-(c).  As an initial matter, Dr. Magurno's observation that plaintiff's neurologic and extremity test results were "normal" did not necessarily contradict her opinion that plaintiff's scoliosis and chronic back pain, the conditions she actually diagnosed plaintiff with, caused plaintiff to have marked limitations for lifting and carrying.  *See e.g. Velez Santiago v. Colvin*, No. 3:16-CV-338, 2017 WL 618442, at *16 n. 5 (D. Conn. Feb. 15, 2017) (lifting restrictions not necessarily in conflict with medical opinion that plaintiff retained full strength in all extremities, "because [plaintiff's] difficulties with lifting and carrying could be caused by his back problems.").  In any event, the ALJ's fleeting discussion of Dr. Magurno's opinion falls

short of satisfying the articulation requirements contained in the new regulations, especially considering the ALJ's failure to discuss the extent to which Dr. Magurno's opinion was consistent with the other evidence of record, medical or otherwise, pursuant to § 416.920c(c)(2).

The ALJ also took Dr. Magurno's relationship with the plaintiff into consideration in evaluating his opinion, per § 416.920c(c)(3).  The ALJ indicated that Dr. Magurno "only saw the [plaintiff] once and did not develop a treating relationship." (T. 19).  Although detracting persuasiveness from a medical opinion based on this factor is permissible, in this case it is vulnerable to some suspicion considering the greatest degree of persuasion was assigned to a non-examining state agency consultant's opinion, and the least was afforded to plaintiff's own treatment providers. (T. 18-20).

In sum, "[t]he new regulations cannot be read as a blank check giving ALJs permission to rely solely on agency consultants while dismissing treating physicians in a conclusory manner."  *Dany Z. v. Saul*, No. 2:19-CV-217, 2021 WL 1232641, at *12 (D. Vt. Mar. 31, 2021).  "On the contrary, many district courts in the Second Circuit, when presented with these regulations, have concluded that the factors are very similar to the analysis under the old rule." *Id.* (Citing *Cuevas v. Comm'r of Soc. Sec*., No. 20-CV-0502, 2021 WL 363682, at *9 (S.D.N.Y. Jan. 29, 2021) (surveying Second Circuit district court level cases considering the new regulations, and concluding that they show that "the essence" of the treating physician's rule remains the same, and "the factors to be considered in weighing the various medical opinions in a given claimant's

medical history are substantially similar" – then noting that this "is not surprising considering that, under the old rule, an ALJ had to determine whether a treating physician's opinion was supported by well-accepted medical evidence and not inconsistent with the rest of the record before controlling weight could be assigned."); *see also Shawn H. v. Comm'r of Soc. Sec.*, No. 2:19-CV-113, 2020 WL 3969879, at * 6 (D. Vt. July 14, 2020) ("Even though ALJs are no longer directed to afford controlling weight to treating source opinions – no matter how well supported and consistent with the record they may be – the regulations still recognize the 'foundational nature' of the observations of treating sources, and 'consistency with those observations is a factor in determining the value of any [treating source's] opinion.' " (alteration in original) (quoting *Barrett v. Berryhill*, 906 F.3d 340, 343 (5th Cir. 2018))).

Here, the ALJ's assessment of the opinion evidence of record did not sufficiently comport with the requirements of 20 C.F.R. § 416.920c(a)-(c).  Furthermore, the limited discussion provided by the ALJ was replete with misrepresentations of the medical evidence of record.  On remand, the ALJ should specifically explain how he considered the supportability and consistency factors as to each medical opinion per § 416.920c(b)(2), taking care to support his evaluation with substantial evidence reflected in the longitudinal record.

## VII.  **NATURE OF REMAND**

Because remand is necessary for further administrative proceedings, this court need not address plaintiff's additional arguments.  See, e.g., *Bell v. Colvin*, No. 5:15-CV-01160, 2016 WL 7017395, at *10 (N.D.N.Y. Dec. 1, 2016) (declining to reach

arguments "devoted to the question whether substantial evidence supports various determinations made by [the] ALJ" where the court had already determined remand was warranted); *Morales v. Colvin*, No. 13-CV-6844, 2015 WL 2137776, at *28 (S.D.N.Y. May 4, 2015) (the court need not reach additional arguments regarding the ALJ's factual determinations "given that the ALJ's analysis may change on these points upon remand").

"When there are gaps in the administrative record or the ALJ has applied an improper legal standard . . . remand to the Secretary for further development of the evidence" is generally appropriate. *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980). This court cannot conclude that "substantial evidence on the record as a whole indicates that the [plaintiff] is disabled[,]" and thus, I cannot recommend a remand solely for the determination of benefits. *See Bush v. Shalala*, 94 F.3d 40, 46 (2d Cir. 1996).

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that the decision of the Commissioner is **REVERSED** and this case **REMANDED**, pursuant to sentence four of 42 U.S.C. § 405(g), for further proceedings consistent with this Memorandum-Decision and Order, and it is

**ORDERED**, that the Clerk enter judgment for **PLAINTIFF**.

Dated: May 23, 2021

Andrew T. Baxter
U.S. Magistrate Judge